**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **C.P.**

**No. 25-27** (Harrison County CC-17-2024-JA-166)

## MEMORANDUM DECISION

Petitioner Allison S. McClure, guardian ad litem for C.P.,[1] appeals the Circuit Court of Harrison County's December 16, 2024, adjudicatory order dismissing the petition, arguing that the circuit court erred by declining to adjudicate the father.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision vacating the circuit court's December 16, 2024, adjudicatory order and remanding for further proceedings is appropriate, in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure.

In October 2024, the DHS filed a petition alleging that the father and the child had moved in with the mother, whose parental rights were terminated for substance abuse in August 2024. The DHS explained that the order terminating the mother's rights imposed strict conditions on her visitation with C.P., including that the mother was not permitted to stay, live, reside with, or have overnights with the child. Shortly after the mother's rights were terminated, the DHS received a referral that she informed the child's school that the child and the father had moved into her residence, resulting in the DHS sending workers to the mother's residence to investigate. The mother refused to allow the workers inside her home, but the workers observed three children inside, including C.P. Despite the father's claims that he only listed the mother's address so that C.P. could be enrolled in school, another child who resided in the mother's home informed the workers that he, the father, and C.P. lived there. As such, the DHS alleged that the father failed to protect C.P. from unsupervised contact with the mother and subjected the child to unsafe conditions, constituting neglect. Shortly after the petition was filed, the DHS submitted several school records indicating that the father listed the mother's address as both his and C.P.'s residence and listed the mother as C.P.'s parent.

In November 2024, the circuit court held an adjudicatory hearing at which the father expressed a desire to stipulate to the allegations in the petition, but the court required the parties

---

[1] The West Virginia Department of Human Services ("DHS") appears by Attorney General John B. McCuskey and Assistant Attorney General Chaelyn W. Casteel. The respondent father appears by counsel Dreama D. Sinkkanen.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

to proceed with witness testimony. The mother's niece testified that she saw C.P. at the mother's apartment regularly and witnessed the mother intoxicated multiple times per week within a week of C.P.'s removal; however, the witness claimed that she did not see the mother actively caring for C.P. while intoxicated. The witness further testified that she observed the father "constantly" staying at the mother's home. When asked how frequently the witness observed the mother drunk, the witness stated, "two or three days out of the week" within the month prior to C.P.'s removal and at a "variety of times of day." At the end of the hearing, the court directed the parties to submit proposed orders and briefs explaining the parties' respective positions on whether the new abuse and neglect petition was appropriate in the first place, as the court opined that this matter should have been "brought as a contempt action against both of [the parents]." Thereafter, the DHS and the petitioner filed a joint proposed adjudicatory order and a joint brief in opposition to the court's intent to dismiss the petition wherein they requested that the court adjudicate the father of neglecting the child by violating the terms of the dispositional order from the prior proceeding, allowing the child to have contact with the mother, and failing to protect the child from the mother and her alcohol abuse.

In the resulting adjudicatory order, the court rejected the father's proposed stipulation because it lacked a factual basis and explained that a contempt proceeding was the appropriate recourse rather than an abuse and neglect petition. The court found that the father left the child alone with the mother; represented that his address was the same as the mother's, indicating their cohabitation; listed the mother as the child's guardian on school paperwork; and attempted to be added to the mother's lease. However, because there was "no evidence of any abuse or neglect or [the mother]'s being under the influence of alcohol while she was watching [C.P.]," the court concluded that the DHS did not prove that the father failed to protect the child. Additionally, the court opined that the appropriate recourse was to file a contempt petition against both parents pursuant to West Virginia Code § 49-4-903 and seek modification of disposition in the prior proceeding pursuant to West Virginia Code § 49-4-606 and *In re K.K.*, No. 23-341, 2024 WL 4751685 (W. Va. Nov. 12, 2024) (memorandum decision), as opposed to "shoehorning [the father]'s permittance of [the mother]'s unauthorized visitation into the statutory definition of abuse and neglect" because a violation of the dispositional order from the prior proceeding did "not automatically constitute conduct that meets the statutory definitions of abuse and neglect." Ultimately, the court dismissed the petition finding that the father should not be subjected to a new proceeding "without proof of new acts or omission of abuse or neglect of the children as defined in the applicable statut[es]." It is from this order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). We have explained that "[a] finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" but cautioned that "a reviewing court may not overturn a finding simply because it would have decided

---

[3] The mother's parental and custodial rights were previously terminated. The permanency plan for the child is reunification with the father.

the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." *Id.*

Before this Court, the petitioner contends that the circuit court erred by finding that the DHS's *only* mechanism for relief concerning the ongoing exposure of C.P. to the mother was a petition for contempt under West Virginia Code § 49-4-903 or a motion to modify the prior dispositional order under West Virginia Code § 49-4-606(a). We agree with the petitioner, as this Court has routinely affirmed termination of a parent's rights upon the filing of a petition alleging exposure of a child to another parent whose rights had previously been terminated. *See In re Brianna Elizabeth M.*, 192 W. Va. 363, 367, 452 S.E.2d 454, 458 (1994) (affirming termination of parental rights where the father "permitted the children's mother to maintain unsupervised contact with them subsequent to the termination of her parental rights"); *In re O.S.*, No. 15-0141, 2015 WL 3687068, at *2 (W. Va. June 15, 2015) (memorandum decision) (affirming termination of a father's parental rights based upon him permitting the child to contact the mother whose rights were previously terminated); *In re N.L.*, No. 18-0745, 2019 WL 181496, at *3 (W. Va. Jan. 14, 2019) (memorandum decision) (same). While a violation of a dispositional order from a prior proceeding does not "automatically constitute conduct that meets the statutory definitions of abuse and neglect," we have explained that "in most instances, violation of court-ordered or other restrictions or requirements issued in the course of abuse and neglect proceedings—particularly as pertains to visitation—would likely constitute a threat to children's safety or well-being and/or affirmatively expose them to continued or additional conditions of abuse and/or neglect." *In re K.K.*, 2024 WL 4751685, at *4, *5. In fact, regarding motions for modification, we have explained that "allegations of abuse and neglect for which a respondent has not been previously adjudicated do not constitute a material change in circumstances for purpose of modification of a dispositional order under Rule 46 of the Rules of Procedure for Child Abuse and Neglect Proceedings and West Virginia Code § 49-4-606(a)." Syl. Pt. 3, in part, *In re P.K.*, 252 W. Va. 253, 921 S.E.2d 893 (2025). Here, there was no evidence that the father had previously been adjudicated of exposing the child to the mother following the termination of her parental rights and the prohibition on her contact with him. As such, a motion to modify the prior dispositional order to address the father's conduct would have been inappropriate. Because our statutory scheme does not prohibit the DHS from filing a petition where new allegations of abuse and/or neglect are made (including situations in which a parent exposes the child to a parent whose rights have previously been terminated), the court erred in finding that a new petition was inappropriate.

The petitioner further asserts that the circuit court erred by finding that the DHS failed to meet is evidentiary burden at adjudication.[4] We agree. West Virginia Code § 49-1-201 defines a "neglected child" as a child "[w]hose physical or mental health is harmed or threatened by a present

---

[4] The petitioner argues that the court should have accepted the father's proposed stipulation because it complied with Rule 26 of the Rules of Procedure for Child Abuse and Neglect Proceedings. However, Rule 26 "sets forth what is required of any stipulation the court accepts as a substitute for a contested adjudicatory hearing as a matter of due process, but it does not provide a right to stipulate simply because those requirements are met; the court retains discretion to accept or refuse it." *In re A.E.*, No. 24-675, 2025 WL 3287508 (Nov. 25, 2025) (memorandum decision). Thus, the petitioner cannot prevail on this assignment of error.

refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education." W. Va. Code § 49-1-201. As indicated above, we have previously explained that a parent's "failure to protect [the child] by allowing continued contact between the child and his biological mother, whose parental rights were terminated due to a severe drug abuse problem" constituted neglect. *In re O.S.*, 2015 WL 3687068, at *2. The petitioner aptly asserts that the instant matter is analogous to *In re O.S.* because O.S.'s father left O.S. alone with his mother, whose parental rights the circuit court terminated two weeks prior, and the court adjudicated him of neglect for failing to protect the child from the mother. In that case, we explained that O.S.'s father "minimized his role in the neglect . . . by willfully disregarding the circuit court's orders that O.S. have no contact with the mother." *Id.* at *4. We ultimately rejected O.S.'s father's argument that the contact was infrequent and due to extenuating circumstances as opposed to "frequent and continuing" contact because the evidence indicated that he allowed the mother to be O.S.'s sole caretaker, witnesses observed the mother taking care of O.S. alone, and the mother lived in the home. *Id.* at *2.

In the instant matter, the court found that the father "allowed [C.P.] to have frequent, unsupervised contact with [the mother] and, in fact, was residing with [the mother], listing her address as [C.P.'s] address on school enrollment paperwork and listing [the mother] as an emergency contact person for [C.P.]." Despite this finding, the court concluded that "none of this amounts to abuse and neglect of [C.P.] by his father . . . but rather would justify the filing of a contempt petition against both parents . . . in the old abuse and neglect case." We disagree with this conclusion. In *In re O.S.*, we affirmed the father's adjudication as an abusing parent based upon "his failure to protect O.S. by allowing continued contact between the child and his biological mother, whose parental rights were terminated due to a severe drug abuse problem." *Id.* at *2. Similarly, here, the court found that the father allowed C.P. to have unsupervised contact and live with the mother, whose rights were terminated due to her substance abuse—findings that fit squarely into the definition of a neglected child. Upon our review of the entirety of the evidence, we are "left with the definite and firm conviction that a mistake has been committed" because the evidence does not support the court's conclusion. *In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 1, in part. Thus, its conclusion is not "plausible in light of the record viewed in its entirety." *Id.* Further, we agree with the petitioner's assertion that the court also erred by finding that "[the mother's niece] did testify that in the month before October 3, 2024, she saw [the mother] under the influence two (2) to three (3) days during one (1) week." The transcript reveals that the niece testified that the mother was intoxicated "two or three days out of the week" in the *month* leading up to C.P.'s removal.

For the foregoing reasons, we vacate the circuit court's December 16, 2024, adjudicatory order dismissing the petition and remand this matter to the circuit court for further proceedings consistent with this opinion. At minimum, the court is directed to enter a new adjudicatory order that includes findings of fact and conclusions of law that support the court's ultimate conclusion as to whether or not the father abused and/or neglected the child and undertake any additional proceedings consistent with the applicable rules and statutes. The Clerk is directed to issue the mandate contemporaneously herewith.

Vacated and remanded, with directions.

4

**ISSUED**: March 3, 2026


**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III